UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO: 2:14-cr-46-FtM-38MRM

DONNIE DERUITER

_____/

## REPORT AND RECOMMENDATION[1]

This cause comes before the Court on Defendant Donnie Deruiter's Motion to Dismiss Indictment (Doc. 181) filed on February 2, 2017. The United States filed a response (Doc. 185) on February 16, 2017. The matter was referred to the Undersigned for a Report and Recommendation. The matter is ripe for review. For the reasons explained below, the Undersigned respectfully recommends that Defendant's Motion to Dismiss Indictment (Doc. 181) be **DENIED**.

## BACKGROUND

Defendant Donnie Deruiter was indicted (Doc. 1) on April 30, 2014. Defendant's initial appearance before the Court occurred on May 5, 2014. (Doc. 6). A detention hearing was held on May 7, 2014. (Doc. 11). The Honorable Douglas N. Frazier found that no condition or combination of conditions of release would reasonably assure the appearance of the Defendant as required or the safety of any other person and the community. (Doc. 12 at 1). The Court ordered

_____

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Defendant be detained pending trial.  (*Id.* at 2).  Defendant has remained in detention during the pendency of his proceedings.

Subsequently, Defendant orally moved to continue the trial on June 9, 2014 (Doc. 15), August 11, 2014 (Doc. 18), and October 14, 2014 (Doc. 21).  The Court granted Defendant's Motions (Docs. 16, 19, 22).  The Court stated that "for the reasons stated on the record at the status conference, the Court finds that the ends of justice served by granting such a continuance outweigh the best interest of the public and the defendant(s) in a speedy trial."  (*Id.*). Additionally, each time the Court determined that the time due to the delays was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Docs. 16, 19, 22).

On November 26, 2014, Defendant filed a Motion for Hearing to Determine Competency (Doc. 23).  Defendant attached an evaluation by Dr. Robert Ouaou, Ph.D. and Dr. Ouaou's *curriculum vitae* to the motion.  (Doc. 23-1 and 23-2).  On December 10, 2014, Judge Frazier held a hearing on Defendant's Motion.  (Doc. 28).  On December 11, 2014, the Court found that there was reasonable cause to believe that "Defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense pursuant to 18 U.S.C. §§ 4241 and 4247."  (Doc. 29 at 1).  Based on that finding, the Court ordered a psychological evaluation of Defendant.  (*Id.* at 1 ¶ 1).

Defendant underwent an evaluation conducted by Dr. Rodolfo Buigas, Ph.D. at the Federal Bureau of Prisons ("BOP") Federal Detention Center in Miami, Florida ("FDC Miami"). Defendant was evaluated from December 2014 through February 2015.  (*See* Doc. 59 at 2).  Dr. Buigas prepared a report, dated April 2, 2015, which report was filed with the Court under seal. (Doc. 59).  During this period of time, Defendant orally moved to continue the trial on December

8, 2014 (Doc. 26), January 12, 2015 (Doc. 31), and March 16, 2015 (Doc. 33).  The Court granted Defendant's Motions each time (Docs. 27, 32, 34), finding that the ends of justice were served by granting continuances and that the time due to the delays was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Docs. 27, 32, 34).

On April 13, 2015, Defendant filed an Unopposed Motion for an Order to Produce (Doc. 36).  Defendant sought an Order requiring FDC Miami to disclose various documentation and materials related to Defendant's examination.  (*Id.* at 10).  On April 14, 2015, the Court granted the Unopposed Motion and ordered the Government to "fully comply with production of the requested information" within thirty (30) days from the date of the Order.  (Doc. 37 at 1).

On May 11, 2015 (Doc. 39), Defendant orally moved to continue the trial.  The Court granted Defendant's Motion (Doc. 40), finding that the ends of justice were served by granting a continuance and that the time due to the delay was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Doc. 40).

On May 13, 2015, Defendant filed an Unopposed Motion to Extend Deadline (Doc. 41). Defendant asked that the Court grant FDC Miami a fourteen (14) day extension to disclose the information sought in the Court's April 14, 2015 Order.  (Doc. 41 at 2).  The Court granted Defendant's Motion on May 21, 2015.  (Doc. 42).  On June 2, 2015, Defendant filed a Second Unopposed Motion to grant FDC Miami an additional extension of eight (8) days.  (Doc. 44 at 3).  The Court granted the Second Motion on June 4, 2015.  (Doc. 45).

On July 13, 2015 (Doc. 52), Defendant again orally moved to continue the trial.  The Court granted Defendant's Motion (Doc. 53), finding that the ends of justice were served by granting a continuance and that the time due to the delay was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Doc. 53).

On September 4, 2015, Defendant filed a Motion to Compel Production (Doc. 54) seeking the *curriculum vitae* of James Pittman.  On October 16, 2015, the Court granted Defendant's Motion to Compel Production.  (Doc. 64).  While that Motion was pending, Defendant orally moved to continue the trial on September 8, 2015 (Doc. 56) and October 13, 2015 (Doc. 62).  The Court granted Defendant's Motions (Docs. 57, 63), finding that the ends of justice were served by granting continuances and that the time due to the delays was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Docs. 57, 63).

The Court conducted a competency hearing on October 29, 2015.  (Doc. 69).  The Undersigned entered a Report and Recommendation (Doc. 85) on December 21, 2015, finding Defendant competent and recommending that this action should proceed to trial.  (Doc. 85 at 38).  During this time, Defendant orally moved to continue the trial on November 9, 2015 (Doc. 80) and December 14, 2015 (Doc. 83).  The Court granted Defendant's Motions (Docs. 81, 84), finding that the ends of justice were served by granting continuances and that the time due to the delays was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Docs. 81, 84).

On December 22, 2015, Defendant filed a request for a thirty (30) day extension of time to file objections to the Report and Recommendation.  (Doc. 86).  On December 23, 2015, the Court granted Defendant an extension until February 19, 2016 to file his objections.  (Doc. 87).  Defendant filed his objections to the Report and Recommendation on February 19, 2016.  (Doc. 91).  During this time, Defendant orally moved to continue the trial on January 11, 2016 (Doc. 89).  The Court granted Defendant's Motion (Doc. 90), finding that the ends of justice were served by granting a continuance and that the time due to the delay was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Doc. 90).

The Honorable Sheri Polster Chappell entered an Order (Doc. 94) on March 3, 2016 accepting and adopting the Report and Recommendation over Defendant's objection.  On March 10, 2016, citing additional medical records not previously considered by the Court or the experts, Defendant filed a Motion for Reconsideration of the Court's March 3, 2016 Order, or alternatively if denied, a Motion to Withdraw as Counsel.  (Doc. 95).  On April 11, 2016, Judge Chappell granted Defendant's Motion for Reconsideration on the issue of competency.  (Doc. 107).  The Court's April 11, 2016 Order referred the matter of Defendant's competency to the Undersigned "to consider the effect of Deruiter's medical report on [the] Report and Recommendation that Deruiter is competent to stand trial."  (*Id.* at 5).

While the Motion for Reconsideration was pending, Defendant orally moved to continue the trial on March 14, 2016 (Doc. 99) and April 11, 2016 (Doc. 105).  The Court granted both of Defendant's Motions (Docs. 100, 106), finding that the ends of justice were served by granting continuances and that the time due to the delays was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Docs. 100, 106).

Subsequently, the Court conducted a series of status hearings to discuss and establish a procedure by which the issues raised in Judge Chappell's April 11, 2016 Order (Doc. 107) should be addressed.  Of note, the Judge Chappell's April 11, 2016 Order only discussed a twenty-five (25) page medical report filed by Defendant under seal.  (Doc. 107 at 4 (citing Doc. 97)).  Subsequently, however, Defendant provided a larger volume of additional medical records beyond what Judge Chappell considered as part of her April 11, 2016 Order.  (*See* Doc. 132 at 5-6).  In other words, Defendant expanded the universe of additional medical records he requested the Court to evaluate on reconsideration.  (*Id.*).  The Court ordered all of the additional medical records Defendant identified to be provided to the experts.  (Doc. 111 at 1 ¶ 1).  The Court

further ordered counsel to discuss with their respective experts how each expert proposed to proceed "in considering the new medical records, including but not limited to (i) whether the expert proposes to supplement his prior opinion based solely on a review of the new medical records or (ii) whether the expert proposes some additional period of observation or testing of the Defendant in light of the new medical records." (*Id.*). Pending receipt of the experts' responses on these points, the Court took under advisement Defendant's *ore tenus* request for a *de novo* evidentiary hearing on the issue of competency. (*Id.* at 2 ¶ 3).

On May 9, 2016, Defendant again orally moved to continue the trial (Doc. 117). The Court granted Defendant's Motion (Doc. 118), finding that the ends of justice were served by granting a continuance and that the time due to the delay was "excludable time" pursuant to 18 U.S.C. § 3161(h). (*See* Doc. 118).

On May 10, 2016, the Court conducted an additional status conference regarding Judge Chappell's April 11, 2016 Order (Doc. 107). At the status conference, counsel for the Government stated that (1) Dr. Rodolfo Buigas required additional time to review the new medical records and to generate an addendum to Dr. Buigas' previous written report and (2) that Dr. Buigas required an additional order from the Court authorizing him to generate an addendum to his previous report. (Doc. 121 at 1). The Court ordered Dr. Buigas to review the new medical records in question and to provide a written addendum to his original report regarding Defendant's competency to proceed in this matter. (*Id.*). Additionally, the Assistant United States Attorney stated at that time that additional observation and/or testing of Defendant by Dr. Buigas was not contemplated. (*Id.*). The Court, however, instructed counsel for the Government to advise the Court at a subsequent status conference scheduled for June 7, 2016 whether "Dr.

Buigas concludes that he requires additional testing and/or observation of Defendant in order to generate the written addendum to his previous report."  (Doc. 121 at 2 ¶ 3).

After the status conference, the Court ordered counsel for both parties "to apprise the Court of the status of the case, including the status of any supplemental reports and/or addenda from the expert witnesses regarding Defendant's competency" at a subsequently scheduled status conference. (Doc. 120 at 1).  The Court also granted Defendant's Motion to Permit Access to Defendant (Doc. 114), allowing Dr. Ouaou (*i.e.*, Defendant's own expert) to visit Defendant at the Charlotte County Jail for purposes of a "professional meeting" any time during the month of May 2016.  (Doc. 119).

On June 7, 2016, the Court conducted an additional status conference.  (Doc. 122).  At that status conference, the United States and Defendant submitted supplemental reports from the competing experts, Dr. Buigas and Dr. Ouaou, on the issue of competency.  (*See* Docs. 124-25). Additionally, the Court granted Defendant's request that the Court conduct a *de novo* hearing on the issue of Defendant's competency.  (Doc. 123 at 2).

On June 9, 2016, the Government filed a Motion for Reconsideration of the Court's Order Granting a *De Novo* Evidentiary Hearing (Doc. 126).  On June 17, 2016, the Court denied the Government's Motion for Reconsideration.  (Doc. 132 at 8).  While the Government's Motion was pending, Defendant orally moved to continue the trial on June 13, 2016 (Doc. 128). The Court granted Defendant's Motion (Doc. 129), finding that the ends of justice were served by granting a continuance and that the time due to the delay was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Doc. 130).

On June 22, 2016, the Government filed a motion seeking to re-evaluate Defendant on the ground that, *inter alia*, "mental states can, in general, change over time – improving or

deteriorating." (Doc. 134 at 4).  Defendant timely filed an expedited response (Doc. 136) as ordered on June 27, 2016.  On July 1, 2016, the Court granted the Government's Motion over Defendant's objection.  (Doc. 137 at 8).  Defendant was evaluated from July 2016 to August 2016.  (Doc. 157 at 2).  Dr. Buigas generated his new report on November 7, 2016.  (*Id.*).  The Court filed the report under seal on November 21, 2016.  (*See id.*).  During this time, Defendant orally moved to continue the trial on July 12, 2016 (Doc. 141), September 13, 2016 (Doc. 148), and November 9, 2016 (Doc. 151).  The Court granted Defendant's Motions (Docs. 142, 149, 152), finding that the ends of justice were served by granting continuances and that the time due to the delays was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Docs. 142, 149, 152).

On November 29, 2016, on motion by the Defendant (Doc. 153), the Court conducted a status conference to address a discovery dispute relating to the competency issue.  (Doc. 158). After the status conference, the Court ordered Defendant to file an appropriate motion to compel no later than December 9, 2016 if the United States had not produced or would not produce the documents sought by Defendant.  (Doc. 159).  On December 7, 2016, Defendant timely filed a Motion to Compel Disclosure (Doc. 160).  On December 9, 2016, the Government filed a Motion for Order to Produce and for a Protective Order (Doc. 164) to produce raw testing data and reports from Defendant's re-evaluation with Dr. Buigas.  Defendant opposed the Motion. (Doc. 167).  On December 19, 2016, the Court denied Defendant's Motion to Compel Disclosure (Doc. 168) and granted the Government's Motions (Docs. 170-71), thereby resolving the parties' discovery disputes.

The Court conducted an additional status conference on December 20, 2016.  (Doc. 173). The Court then scheduled the *de novo* competency hearing for January 31, 2017.  (Doc. 174).

On January 10, 2017, Defendant orally moved to continue the trial (Doc. 176).  The Court granted Defendant's Motion (Doc. 177), finding that the ends of justice were served by granting a continuance and that the time due to the delay was "excludable time" pursuant to 18 U.S.C. § 3161(h).  (*See* Doc. 177).  The trial is currently set for the April 2017 trial term.  (*Id.*).

On January 27, 2017, the Government filed a Motion to Continue De Novo Competency Hearing (Doc. 178) on the grounds that the Assistant United States Attorney, Charles Schmitz, was involved in a prolonged trial in another case (*United States v. Vargas, et al.*, Case No. 2:15-cr-00115-SPC-CM) that conflicted with the date set for the *de novo* competency hearing.  The Government requested that the competency hearing "be rescheduled to an available date of the Court, but not before February 15, 2017, that is also mutually convenient to the parties for witness scheduling purposes."  (Doc. 179 at 1 (citing Doc. 178 at ¶ 2)).  Although the Motion was opposed, the Court found that "Assistant United States Attorney Schmitz's involvement is essential to resolving the outstanding issues regarding Defendant's competency due to the long and complex history associated with these proceedings."  (Doc. 179 at 1).  The Court ordered counsel for the parties to meet and confer immediately after the conclusion of the other trial to provide the Court with alternative dates in February or March 2017 when all parties, counsel, and experts would be available.  (*Id.*).  On February 8, 2017, the Court re-noticed the *de novo* competency hearing to occur on March 7, 2017.  (Doc. 182).

Defendant filed the present Motion to Dismiss Indictment (Doc. 181) on February 2, 2017.  The Government filed its response (Doc. 185) on February 16, 2017.

**DISCUSSION**

Defendant's Motion to Dismiss Indictment (Doc. 181) seeks two forms of relief.  First, Defendant's counsel seeks leave to proceed on behalf of his client.  (Doc. 181 at 3).  Second, Defendant seeks dismissal of the indictment for violation of his Sixth Amendment right to a speedy trial.  (*Id.* at 12).  The Undersigned discusses each issue raised by Defendant below.

## I.       Leave to Proceed

Defendant's counsel seeks leave to proceed on behalf of "an incompetent defendant." (Doc. 181 at 3).  Defendant's counsel argues that Defendant is incompetent[2] and cannot consult with him to a rational degree of understanding.  (*Id.*).  Counsel further contends that he is "ethically confined as to what constitutional remedies he may seek for a client who is incompetent to proceed."  (*Id.* at 2).  Counsel points out that he previously argued in this case that it is unclear whether counsel can "assert or waive the speedy-trial rights of a client defense counsel believes to be competent absent the informed consent of that client."  (Doc. 181 at 2 (citing Doc. 136 at 14 n.12 (citations omitted))).  Despite this uncertainty, counsel states that he "now believes it is inconceivable that any competent client who has already suffered thirty-three months of pre-trial and who was made aware of the contents of Part II of this Motion would oppose proceeding with the relief sought in Part II of this motion."  (*Id.* at 2-3).  As such, Defendant's counsel seeks leave to pursue this Motion on behalf of Defendant, despite counsel's belief that Defendant is incompetent.  (*Id.*).

The Government did not respond to this request by Defendant.  (*See* Doc. 185).

---

[2] As set forth extensively above, competency-related proceedings are ongoing.  As such, Defendant's incompetence has not been established.

The Court is sensitive to defense counsel's ethical concerns.  The Court notes, however, that the conduct of attorneys appearing before this Court is governed by the Rules Regulating the Florida Bar.  *See* M.D. Fla. R. 2.04(d).  The Rules Regulating the Florida Bar provide an applicable definition for the scope of legal representation.  *See* Fla. Bar R. 4-1.2.  Specifically, Fla. Bar R. 4-1.2(a) requires attorneys to abide by the client's decisions concerning the objectives of the representation.  Additionally, counsel in criminal cases must specifically "abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify."  *Id.*  While counsel must reasonably consult with a client, an attorney "may take such action on behalf of the client as is impliedly authorized to carry out the representation."  *Id.*

In this case, as stated above, Defendant's counsel argues that he cannot communicate with his client to allow Defendant to make decisions in this case.  (*See* Doc. 181 at 3).  Even assuming *arguendo* that Defendant is incompetent, Defendant's counsel has not cited to any controlling legal authority that suggests seeking dismissal of an indictment based on an alleged violation of Defendant's constitutional rights under these circumstances violates counsel's ethical obligations.  Moreover, the Court has not identified any such authority directly on point.

Defendant's counsel does, however, cite to *Wells v. Petsock*, 941 F.2d 253, 256-279 (3d Cir. 1991), *cert. denied*, 505 U.S. 1223 (1992), as framing the same issue, but not deciding it. (Doc. 181 at 2).[3]  *Wells* is instructive to a limited extent.  In *Wells*, a petitioner for a writ of

---

[3]  Defendant's counsel also cites to *United States v. Joshi*, 896 F.2d 1303, 1307-08 (11th Cir. 1990), *cert. denied*, 498 U.S. 986 (1990).  (Doc. 181 at 2).  *Joshi* contains an extensive discussion of the types of "inherently personal right[s] of fundamental importance" for which a defendant's consent was found to be required and other types of "tactical decisions" made by defense attorneys for which a defendant's consent was not required.  *Id.*  *Joshi* does not address waiver of speedy trial rights where competency is placed at issue or counsel's constraints, if any, against filing a motion to dismiss an indictment based on alleged violations of the right to speedy

habeas corpus argued that his constitutional right to a speedy trial was violated when his trial counsel agreed to postpone the trial date without the petitioner's consent.  *Wells*, 941 F.2d at 256. The Third Circuit declined to answer the question directly, holding instead:

> [B]ecause under the four *Barker*[4] factors Wells' petition does not state facts which arise to a level of a deprivation of the constitutional right to a speedy trial, we do not need to decide whether this right is so fundamental and personal that it can be waived only with the defendant's personal consent.

*Id.* at 256-257.  The same conclusion can be reached here.  The Court need not decide whether Defendant's Sixth Amendment right is so fundamental and personal that it can be waived (or prosecuted on a motion to dismiss the indictment) only with Defendant's consent because, as set forth in detail below, application of the *Barker* factors in this case weighs against the Defendant.

The Court, therefore, need not answer the question posed by Defendant's counsel concerning potential ethical constraints under these circumstances and need not affirmatively grant counsel leave to proceed on the Motion.

## II.        Motion to Dismiss Indictment

Defendant contends that his Sixth Amendment right to a speedy trial has been violated. (Doc. 181 at 3).[5]  The Sixth Amendment of the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ."  U.S. Const. amend. VI.  This speedy-trial right, however, has been described by the Supreme Court as "amorphous," "slippery," and "necessarily relative."  *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 522-23 (1972)).

---

trial when competency is at issue.  *Id.*  Therefore, *Joshi* does not answer the question posed by Defendant's counsel here.

[4] *Barker v. Wingo*, 407 U.S. 514, 522-23 (1972).

[5] Defendant is not moving to dismiss the indictment for a violation of the Speedy Trial Act.

To evaluate whether a defendant's right to a speedy trial has been violated, the Supreme Court established a "balancing test" in the seminal case of *Barker v. Wingo* that weighs the conduct of both the prosecution and the defendant.  *Id.* at 90 (quoting *Barker*, 407 U.S. at 529, 530).  The four primary *Barker* factors courts must weigh are:  (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the actual prejudice borne by the defendant.  *United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010) (citing *Barker*, 407 U.S. at 530); *see also United States v. Eguez*, No. 2:09-cr-92-FTM-29CM, 2016 WL 6493456, at *4 (M.D. Fla. Nov. 2, 2016).  The Undersigned addresses the four factors below.

### A.    *The Length of the Delay*

The first factor of the balancing test – length of the delay – actually serves as a "double enquiry."  *Villarreal*, 613 F.3d at 1350 (quoting *Doggett v. United States,* 505 U.S. 647, 651 (1992)).  The Supreme Court has stated that in order to trigger a constitutional speedy trial analysis under the Sixth Amendment, a defendant "must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  *Doggett*, 505 U.S. at 651-52.  "If, and only if, the defendant satisfies this threshold inquiry will we proceed to address the remaining three factors of the Barker balancing test."  *Villarreal*, 613 F.3d at 1350.  The Supreme Court has noted that courts have generally found that post-accusation delay is presumptively prejudicial when it approaches one year.  *Doggett*, 505 U.S. at 652 n.1.

The Court must also examine "'the extent to which the delay stretches beyond the bare minimum needed' to satisfy the threshold showing of presumptive prejudice."  *Villarreal*, 613 F.3d at 1350 (citing *Doggett*, 505 U.S. at 652).  "The longer the pretrial delay extend[s] beyond

the 'bare minimum' necessary to show presumptive prejudice, the stronger the presumption that the pretrial delay prejudice[s] the defendant." *Id.* (citing *Doggett*, 505 U.S. at 655-57). Moreover, "[t]he length of the delay itself weighs against the government, incrementally increasing in weight as the delay becomes increasingly protracted, and a particularly lengthy delay may also affect . . . analysis of the fourth Barker factor." *Id.* (citing *Doggett*, 505 U.S. at 655-57).

In this case, Defendant was indicted on April 30, 2014. (Doc. 1). The Government concedes that the current length of the delay of almost three years between indictment and the current motion is presumptively prejudicial. (*See* Doc. 185 at 9). Based on this concession and the fact that the current delay between indictment and trial is almost three years, the Defendant has met this threshold inquiry to trigger a constitutional speedy-trial right analysis. *See Doggett*, 505 U.S. at 651-52. Because this threshold inquiry is met, the Court must address the remaining three factors of the *Barker* test. *See Villarreal*, 613 F.3d at 1350. Moreover, because the delay is presumptively prejudicial, the Undersigned finds that this factor weighs against the Government. *See id* at 1352.

### B.   *Reason for the Delay*

The next factor of the *Barker* test is the reason for the delay. The Government bears the burden of explaining valid reasons for the cause of the pre-trial delay. *Villarreal*, 613 F.3d at 1351 (citing *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006)). Courts allocate different weights to different reasons for a delay. *Villarreal*, 613 F.3d at 1351. The Eleventh Circuit, has noted:

> (1) [a] deliberate attempt to delay the trial in order to hamper the defense [is] weighted heavily against the government; (2) [a] more neutral reason such as negligence or overcrowded courts [is] weighted less heavily [against the government] but nevertheless [is] considered since the ultimate responsibility for

such circumstances must rest with the government rather than the defendant; and (3) a valid reason, such as a missing witness, . . . serve[s] to justify appropriate delay.

*Villarreal*, 613 F.3d at 1351 (alterations in original; internal quotation marks omitted; citing *Barker*, 407 U.S. at 531); *see also Eguez*, 2016 WL 6493456, at *5.  Nevertheless, the Supreme Court has noted that "delay caused by the defense weighs against the defendant . . . ." *Brillon*, 556 U.S. at 90.  Moreover, "[b]ecause 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant." *Id.* at 90-91.

In this case, Defendant contends that the Government's negligence is the cause for the delay.  (Doc. 181 at 10).  Defendant argues that "the government has evinced a clear indifference for its duty to advance this case to trial."  (*Id.*).  Specifically, Defendant argues that he has been prejudiced by two delays caused by the Government.  (*Id.* at 3-8).

First, Defendant contends that a delay of 120 days was caused by the Government's failure to produce medical records.  (*Id.* at 3).  Defendant contends this delay began on December 21, 2015 – the date of the Undersigned's Report and Recommendation (Doc. 85) on Defendant's Competency – and continued until April 20, 2016, the date the Court held a status conference following Judge Chappell's April 11, 2016 Order (Doc. 107) granting reconsideration.  As summarized by Judge Chappell in her original Order adopting the Report and Recommendation:

> Defendant argues the Government did not produce his medical records from the Maimonides Medical Center in Brooklyn showing Defendant suffered head trauma in an auto accident for Dr. Buigas' review prior to Dr. Buigas' formulating his opinion.  Defendant further argues the Government did not provide the medical report to the Court at the competency hearing even though the Government had the report in its possession.  Defendant contends that the Government and Court both relied on the absence of any medical evidence—other than self-reported injuries— to discredit Defendant's expert, Dr. Ouaou.  As such, the Defendant argues that his

15

Fifth and Sixth Amendment rights to stand trial only if he is competent were violated by the Government's failure to present all of the evidence at the hearing.

(Doc. 94 at 4).[6]  Defendant contends that the Government is "entirely responsible" for this delay.

(Doc. 181 at 5).

Second, Defendant argues that an additional delay beginning August 12, 2016 and continuing to present was caused by the Government because it sought to have Defendant re-evaluated by the BOP.  (*Id.*).

The Government denies that it is the cause for the delays.  (Doc. 185 at 3).  Instead, the Government contends that the delays are attributable to Defendant's own actions.  (*Id.*).

As to the first delay, the Government argues that the Court has already rejected Defendant's argument that it was the Government's obligation to present evidence on behalf of Defendant.  (*Id.* at 4).  Thus, the Government contends that the first delay is "directly attributable to the defendant's failure to produce his own document into evidence."  (*Id.* at 7).

As to the second delay, the Government argues that this delay is not attributable to the United States' negligence but rather was caused by Defendant seeking to have the evidentiary hearing reopened to a *de novo* review.  (*Id.* at 8).  The Government contends that the need to re-evaluate Defendant occurred due to the passage of time.  (*Id.*).

The Government further notes that Defendant "does not even argue that any other period of time between indictment and the present, other than the two periods, are attributable to the United States."  (*Id.* at 10).  The Government also notes that it has never moved to continue the trial—only Defendant has sought continuances.  (*Id.*).  Thus, the Government argues that

---

[6]  Defendant states that he agrees with this characterization.  (Doc. 181 at 5).

"because the reasons for the vast majority of the delays were unarguably not attributable to the United States, the defendant's motion to dismiss fails."  (*Id.*).

Upon review, the Undersigned agrees with the Government and finds that Defendant's arguments as to this *Barker* factor fail.  Specifically, as to the first alleged delay of 120 days, the presiding trial judge has already rejected Defendant's argument that it was the Government's obligation to present evidence on behalf of Defendant.  In the Court's March 3, 2016 Order (Doc. 94) accepting and adopting the Undersigned's Report and Recommendation, the Court stated, "[w]hile the Defendant argues the Government did not produce the medical report to the Court at the competency hearing, neither did Defendant who also had possession of the medical report."  (*Id.* at 4).  The Court continued stating, "[i]t is the Defendant's burden to produce evidence to support his claim of incompetence not the Government's."  (*Id.* (citations omitted)).  Moreover, the Court specifically stated that "the Defendant had possession of the medical report and acknowledges that same was not provided to his own expert Dr. Ouaou when he made his assessment."  (*Id.* at 5).  The Court concluded, therefore, that "Defendant's objection that his Fifth and Sixth Amendment Rights were violated by the Government's failure to provide his medical report to Dr. Buigas or the Court is not well taken and the objection is overruled."  (*Id.*).

In the present context of Defendant's Sixth Amendment right to a speedy trial, the Undersigned finds that the Court's previous finding applies in full force.  While the Court eventually granted Defendant's Motion for Reconsideration, (*see* Doc. 107 at 5), the Court did not did not reconsider or vacate its previous finding that "Defendant's objection that his Fifth and Sixth Amendment Rights were violated by the Government's failure to provide his medical report to Dr. Buigas or the Court is not well taken."  (Doc. 94 at 5).  Specifically, the Court stated:

> Since Deruiter's medical report in question was not presented by either the Government or Deruiter at the hearing and was unavailable for Judge McCoy's consideration, the Court will grant the motion for reconsideration.  The matter will be referred back to Judge McCoy to consider his Recommendation that Deruiter is competent to stand trial in light of the medical report showing Deruiter was in an auto accident and suffered a head injury when he was seven years old.

(*Id.* at 4).  Critically, however, the Court never altered its previous finding as to Defendant's failure to produce the medical records or its finding as to which party had the burden to produce those records.  (*See id.*).

Even assuming, *arguendo*, that the Court reconsidered its prior finding, the Undersigned would reach the same conclusion again on reconsideration for all of the reasons stated by the presiding trial judge.  Specifically, the Undersigned finds that Defendant's contention that his Sixth Amendment right to a speedy trial was violated by the Government's failure to provide his medical report to Dr. Buigas or the Court is not well taken.  As the Undersigned has previously found, it is Defendant's burden to prove that he is incompetent to proceed.  (*See* Doc. 85 at 30). Stated differently, it was Defendant's burden and responsibility to provide the medical records to his own expert and/or the Court.  As Defendant appears to concede, however, Defendant had the opportunity to provide the medical records at the first hearing, yet failed to do so.  (*See* Doc. 95 at ¶ 8).  This failure is attributable solely to Defendant.  Moreover, even if it could be argued that this delay is solely attributable to Defendant's counsel's failures, the Undersigned finds that that because Defendant's counsel is Defendant's agent when he is acting, or failing to act, any delay caused by Defendant's counsel in this case must be charged against the Defendant.  *See Brillon*, 556 U.S. at 90-91.

Upon review, the Undersigned specifically rejects Defendant's assertion that the Government violated his rights by "demanding medical records from Mr. Deruiter, receiving them, not providing them to its expert, eliciting hearing testimony from its expert premised on

their non-existence and then arguing the salience of their non-existence." (Doc. 95 at ¶ 6).  The Court cannot hold the Government accountable for delays attributable to the Defendant. Accordingly, the first period of delay is attributable to Defendant and weighs against him.

As to the second delay, the Undersigned rejects Defendant's argument that the Government is responsible for the delay resulting from the additional evaluation conducted by the Court-appointed evaluator at the BOP.  Instead, the Undersigned finds it was Defendant's own actions that created the need for Defendant to be re-evaluated.  Specifically, after the Court ordered the medical records at issue to be provided to the experts, the Court also permitted Defendant's expert, Dr. Ouaou, to visit Defendant for the purposes of a "professional meeting." (Doc. 119).  Dr. Ouaou then submitted another report for the Court's consideration on the issue of competency.  (Doc. 124).  Unlike the supplemental report submitted by the Court-appointed expert, Dr. Buigas (Doc. 125), Dr. Ouaou's report set forth matters that went beyond mere consideration of the additional medical records at issue.  (*See* Doc. 124).  Those matters included, *inter alia*, additional evaluation of the Defendant and commentary concerning the relative qualifications, methodologies, prior findings, and prior testimony of the opposing expert, Dr. Buigas.  (*See id.* at 6-8).  Because Dr. Ouaou's report set forth matters that went beyond consideration of the additional medical records at issue and because of the possibility that Defendant's mental condition had changed since his last evaluation by Dr. Buigas, the Court granted the Government's Motion to Re-Evaluate the Defendant.  (*See* Doc. 137 at 7).  The Court found that "allowing Dr. Buigas to reevaluate Defendant will add clarity to the record as to Dr. Buigas' expert opinion concerning Defendant's competency and assist the Court in assessing the Defendant's competency."  (Doc. 137 at 7).  While Defendant objected to the re-evaluation, the delay during this time period cannot be attributed to the Government because it was the

actions of Defendant – through his own hired expert – that lead to the need to re-evaluate Defendant.  Because this delay is attributable to Defendant, the Undersigned finds that the delay weighs against him.

Furthermore, even assuming *arguendo* that the Government could somehow be deemed responsible for the second delay, the Undersigned finds that delay caused by Defendant's re-evaluation by the BOP for reasons related to competency was a "valid reason" for a delay.  *See Villarreal*, 613 F.3d at 1351.  The Court has not identified any legal authority suggesting that delays resulting from a defendant's competency proceedings may not be considered a "valid reason."  Other courts have been unwilling to find that delays attributable to a defendant's mental capacity defense and competency proceedings weigh against the Government.  *See, e.g.*, *United States v. Walker*, No. 3:09-CR-366-HEH, 2010 WL 2976049, at *6 (E.D. Va. July 28, 2010).  Further, the Undersigned notes that a defendant's *incompetency* is a valid reason for a delay.  *See Danks v. Davis*, 355 F.3d 1005, 1009 (7th Cir. 2004); *see also United States v. Uranga*, No. 1:13-CR-0463-LMM, 2016 WL 6525151, at *4 (N.D. Ga. Nov. 3, 2016).  Additionally, although the present motion to dismiss is premised on a constitutional violation and not a violation of the Speedy Trial Act, the Undersigned notes that delays "resulting from any proceeding, including any examinations, to determine the mental competency" of a defendant are excluded from computation under the Speedy Trial Act.  18 U.S.C. § 3161(h)(1)(A).  Reaching a contrary conclusion – *i.e.*, that delays resulting from competency proceedings are not "valid reasons" – would seemingly contradict the Speedy Trial Act, and the Court has found no support for such a proposition.  Thus, the Undersigned further finds that delays resulting from Defendant's competency proceedings are valid reasons for a delay.

In this case, Defendant's re-evaluation results from Defendant's competency proceedings. As the Court previously found, the re-evaluation of Defendant will serve to "add clarity to the record and assist the Court in deciding *the issue of competency*." (Doc. 137 at 7 (emphasis added)). Moreover, the Court previously found that "any potential prejudice Defendant may face from delay is outweighed by the need to fully adjudicate the issue Defendant has raised *concerning his competency* and the additional matters Defendant's expert injected into this case through the expert's supplemental report." (Doc. 137 at 7-8 (emphasis added)). Accordingly, because the re-evaluation relates to Defendant's competency proceedings, the Undersigned finds that the delay due to Defendant's re-evaluation by the BOP is a valid reason for a delay. Thus, the delay resulting from Defendant's re-evaluation weighs in favor of the Government. *See Villarreal*, 613 F.3d at 1351.

Finally, as pointed out by the Government, Defendant has not specifically argued that the cause of any other period of delay between indictment and the present, other than the two periods discussed above, are attributable to the United States. (Doc. 185 at 10). As a result, Defendant appears to concede that the delays from these other periods either (1) have not prejudiced Defendant and/or (2) were due to valid reasons. In fact, the record is clear that the primary reason for delays in this case have been due to Defendant's competency proceedings—a valid reason for a delay. *See* analysis, *supra*.

Nevertheless, the Court acknowledges that one period of delay is attributable to the Government—the delay due to the Assistant United States Attorney's involvement in a separate trial. As stated above, even neutral reasons such as overcrowding of the court are weighed against the Government. *See Villarreal*, 613 F.3d at 1351. In this instance, even though the Court stated that "Assistant United States Attorney Schmitz's involvement is essential to

resolving the outstanding issues regarding Defendant's competency due to the long and complex history associated with these proceedings," the delay of roughly one month between when the *de novo* hearing was originally scheduled on January 31, 2017 and March 7, 2017 is attributable to the Government's request for a continuance.  (*See* Doc. 179 at 1).

Nevertheless, the Government correctly notes that it has *never* moved to continue the trial.  (*See id.*).  The record is clear that only Defendant has sought continuances of the trial term. (*Id.*).  Thus, the one-month delay caused by the Government does not overcome the rest of the delays from the current proceedings that are due to the Defendant's own actions or were caused by a valid reason.  Accordingly, for the reasons stated above, the Undersigned finds that the majority of the delays from the current proceedings – including those delays Defendant now complains of in the Motion to Dismiss – are either due to the Defendant's own actions or were caused by valid reasons.  Thus, the Undersigned finds that this factor weighs against Defendant.

### C.   *Defendant's Assertion of the Speedy-Trial Right*

The next factor is Defendant's assertion of the speedy-trial right.  The Eleventh Circuit has stated that "[a] defendant's assertion of his speedy trial right is often 'entitled to strong evidentiary weight in determining whether a defendant is being deprived of the right.'" *Villarreal*, 613 F.3d at 1354 (citing *Barker*, 407 U.S. at 531-32).  The reason for this is "because a timely demand for a speedy trial often supports an inference that the defendant was not at fault for the delay and that the delay prejudiced the defendant."  *Id.* (citing *Barker*, 407 U.S. at 531). Nevertheless, "the weight attached to a defendant's assertion of his speedy trial right will differ with the circumstances of the defendant's demand."  *Id.* (citing *Barker*, 407 U.S. at 528-29). Additionally, while the "failure of a defendant to assert his right to a speedy trial is not absolute or conclusive evidence that he was not denied that right," this Court has stated that "the

timeliness, vigor, and frequency with which the right to a speedy trial is asserted are important elements to be considered in the four-factor balancing test." *United States v. Castellana*, 461 F. Supp. 233, 239 (M.D. Fla. 1978) (citations omitted).  Further, a "[l]ong and unexplained silence by a defendant must be weighed against [a defendant] and in favor of the Government." *Id.* (citations omitted).

In this instance, upon consideration of the record, the Undersigned finds that Defendant's assertion of the speedy-trial right weighs against him.  Specifically, Defendant raised his speedy-trial rights approximately twice before the present Motion—once in his Objection to the Government's Motion to Re-Evaluate Defendant (*see* Doc. 136 at 13-15) and also in his objection to a continuance of the *de novo* hearing (*see* Doc. 178 at 2).  Notwithstanding these objections, however, the Undersigned notes that Defendant has moved to continue the trial term four times since raising his first objection.  (Docs. 141, 148, 151, 176).  It is unclear why *Defendant* affirmatively sought continuances of the trial term on these four occasions if Defendant had speedy trial concerns.  This point weighs against Defendant.  *See Castellana*, 461 F. Supp. at 239.  Moreover, the record is clear that *only* Defendant has sought continuances of the trial term in this case—requesting no less than twenty-one continuances during the pendency of his action.  The Government has never sought a continuance of the trial term.  In sum, the record does not show that Defendant has demanded his right to a speedy trial in a way that demonstrates he has been deprived of a speedy trial.  *See id.*; *Villarreal*, 613 F.3d at 1354. Accordingly, this factor weighs against Defendant.

### D.   Prejudice Due to the Delay

The final factor is the prejudice due to the delay.  In evaluating this issue, the Eleventh Circuit has stated that "[i]f . . . the first three factors do not weigh heavily against the

government, the defendant generally must demonstrate actual prejudice to succeed on his speedy trial claim." *Villarreal*, 613 F.3d at 1355 (citing *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003)).  Specifically, courts evaluate "the prejudice suffered by the defendant in light of the three interests of the defendant the speedy trial right was intended to protect:  (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Id.* (internal quotation marks omitted; citing *Barker*, 407 U.S. at 532).  The most important factor is the possibility that the defense will be impaired "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (internal quotation marks omitted; citing *Barker*, 407 U.S. at 532).  Nevertheless, "[t]he defendant must proffer more than "conclusory assertions of prejudice" or "unsubstantiated allegations of witnesses' faded memories." *United States v. Woodley*, 484 F. App'x 310, 319 (11th Cir. 2012) (citing *United States v. Hayes*, 40 F.3d 362, 366 (11th Cir. 1994)).

Courts have been unwilling to make a finding of "actual prejudice" without evidence proffered by Defendant.  In *United States v. Woodley*, for example, the Court declined to find that the defendant's pretrial incarceration of twenty-two months was prejudicial to the defendant when the defendant had provided no evidence of actual prejudice.  *Woodley*, 484 F. App'x at 319.

Similarly, the length of the delay, standing alone, does not amount to actual prejudice.  In *United States v. Mitchell*, for example, the defendant argued that a three-year pretrial delay "caused him to remain in jail without bail and resulted in [a co-defendant's] decision to testify against him." 374 F. App'x 859, 866 (11th Cir. 2010).  The Court found, however, that "[n]either of these claims amounts to oppressive pretrial incarceration, anxiety, or impairment of

his defense." *Id.*  While the Eleventh Circuit noted that the defendant would have remained in custody regardless due to a pending state court charge, the court's decision does not suggest that a delay of three years, on its own, demonstrates actual prejudice.  *See id.*

In this instance, Defendant has provided no evidence that he has suffered any actual prejudice.  In fact, Defendant concedes that the "[p]rejudice as to a defense impaired by the government's delay in this case is uncertain at this juncture because undersigned counsel has yet to engage in a discussion with Mr. Deruiter wherein Mr. Deruiter demonstrated an ability to assist properly in his defense."  (Doc. 181 at 11).  Without more, the Undersigned concludes that Defendant has provided nothing more than "conclusory assertions of prejudice," which are not sufficient to show actual prejudice.  *See Woodley*, 484 F. App'x at 319.  Furthermore, there is no indication that Defendant's current delay of thirty-three months, standing alone, has been prejudicial to him.  *See Mitchell*, 374 F. App'x at 866.  Accordingly, the Undersigned finds that Defendant has not demonstrated actual prejudice and, therefore, this factor weighs heavily against Defendant.  *See Villarreal*, 613 F.3d at 1355.

### III.        Conclusion

The Court must, therefore, balance all four of the *Barker* factors.  *Villarreal*, 613 F.3d at 1357.  The first factor weighs against the Government.  The second and third factors weigh against Defendant.  The fourth factor weighs heavily against Defendant.  Taken together, the *Barker* analysis is not favorable to the Defendant.  Thus, the Undersigned finds that the *Barker* factors weigh in favor of the Government such that the Government has not violated Defendant's right to a speedy trial.  Accordingly, the Undersigned respectfully recommends that Defendant's Motion to Dismiss Indictment (Doc. 181) be denied.

Additionally, the Undersigned finds that the record contains sufficient information to evaluate the issues presented by the Motion to Dismiss without the need to conduct an evidentiary hearing on the Motion.  In addition to the large amount of information contained on the face of the Court's docket, the parties filed briefs stating their respective positions and the evidence on which they rely.  Moreover, Defendant did not request an evidentiary hearing.  The Undersigned finds, therefore, that this matter is fully submitted for review such that an evidentiary hearing is not required as a matter of course.

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that Defendant's Motion to Dismiss Indictment (Doc. 181) be **DENIED**.

Respectfully recommended in Chambers in Fort Myers, Florida on March 3, 2017.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties